**Edgar Allan POE, Jr.**
**and**
**Douglas Gordon, Plaintiffs,**
**v.**
**MARQUETTE CEMENT MANUFAC-**
**TURING COMPANY, Defendant.**
**Civ. No. 73–531–H.**

United States District Court,
D. Maryland.
April 15, 1974.

James E. Carbine, George Cochran Doub and James H. Langrall, Baltimore, Md., for plaintiffs.

Gary L. Prior and McDermott, Will & Emery, Chicago, Ill., and Paul V. Niemeyer, Robert B. Barnhouse and Piper & Marbury, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, District Judge:

The plaintiffs in this case, Edgar Allan Poe, Jr. and Douglas Gordon, are the registered owners of 4800 and 3948 shares, respectively, of the common stock of Marquette Cement Manufacturing Company, a corporation of the State of Illinois (hereinafter "Marquette of Illinois"). The defendant, Marquette Cement Manufacturing Company, is incorporated in the State of Delaware.

On February 1, 1973, the Board of Directors of Marquette of Illinois approved and submitted to the stockholders a proposal to change that company's state of incorporation to Delaware through merger into the defendant, which was a newly created, wholly owned subsidiary (hereinafter "Marquette of Delaware"). The stockholders approved this merger on February 28, 1973 at a stockholders' meeting in Chicago, which was then the corporate headquarters. The plaintiffs voted aginst the merger and on May 24, 1973, instituted this action in this Court based on diversity jurisdiction to assert their rights as dissenting shareholders under Section 70 of the Illinois Business Corporation Act. Plaintiffs allege that they have fulfilled all preliminary requirements for proceeding under the Act. The relevant portions of the Illinois statute provide that 90 days after the effective date of a merger of this sort, a dissenting shareholder may:

> ". . . file a complaint in any circuit court of this State asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the surviving

or new corporation for the amount of such fair value as of the day prior to the date on which such vote was taken approving such merger or consolidation, together with interest thereon to the date of such judgment. The practice procedure, and judgment shall be governed by the Civil Practice Act of this State."

Defendant has now filed a motion to dismiss, contending (1) that this Court lacks jurisdiction over the subject matter of the complaint because this action involves the internal affairs of a foreign corporation; (2) that even if there is jurisdiction, this Court should decline to exercise it because the Illinois statute provides a particular tribunal and an exclusive remedy for dissenting stockholder suits of this type; and (3) that this Court should, in any event, apply the doctrine of *forum non conveniens* and dismiss the suit.

As its first point, defendant asserts that this Court is without jurisdiction because the courts of the State of Maryland have held that they lack jurisdiction over the "internal affairs" of a foreign corporation and because a federal district court in a diversity action, acting in effect as another court of the State, must likewise close its doors. This assertion raises questions, first, of state law; and secondly, of federal law under the doctrine of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny.

This Court will first undertake to determine whether a Maryland court would decline jurisdiction in this case because this action involves the internal affairs of a foreign corporation. Secondly, this Court will undertake to determine whether, under federal law, it has subject-matter jurisdiction to decide the questions presented, even though a Maryland court might not assume jurisdiction.

Four Maryland cases have been cited in support of defendant's argument that a Maryland court would hold that it was without jurisdiction to hear the claim asserted in this case. These cases are as follows: North State Copper and Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039 (1885); Condon v. Mutual Reserve Association, 89 Md. 99, 42 A. 944 (1899); O'Hara v. Frenkil, 155 Md. 189, 141 A. 528 (1928); Berger v. Bata Shoe Co., 197 Md. 8, 78 A.2d 186 (1951).

Analysis of these cases indicates that all except *North State Copper* were equitable actions, and that was a mandamus action in which the plaintiff asked the court to compel a foreign corporation to reinstate him as a stockholder. In *Condon*, the plaintiff sought injunctive relief and a declaratory decree concerning the validity of certain policyholder assessments by a foreign insurance company. In *O'Hara*, the plaintiffs, who were directors and shareholders of a foreign corporation, sought injunctive and declaratory relief, including a determination of the respective rights of the stockholders and the appointment of a receiver. *Berger* was a derivative action seeking an injunction and an accounting against officers and directors of a New York corporation.

■ Quite clearly, all of these cases involved the internal affairs and internal management of a foreign corporation. Good reasons exist why a court in one state would hesitate to grant injunctive or mandamus relief which would result in controlling or directing the affairs or management of a foreign corporation, or declaring the continuing rights of stockholders of a foreign corporation. But the present case involves no such problems. Here, the plaintiffs seek merely a money judgment, and their status as stockholders is in effect now ended. The only issue presented is a determination of the fair value of their shares of common stock. Such a determination would disrupt or interfere with the internal affairs of the defendant corporation no more than would some other claim against the foreign corporate defendant for a money judgment. It could hardly be contended that where jurisdiction and venue exist, as they do in this case, a creditor would not be entitled in Maryland to sue a foreign

corporation because such a suit would interfere with the internal affairs of such corporation. In asserting the claims here and their intention to cease being stockholders, plaintiffs assert rights more akin to those of a creditor of a corporation than to those of a stockholder.

The Maryland Court of Appeals has itself suggested such a distinction. In the *North State Copper* case, the Court defined internal affairs as follows (at page 154):

> "It may not be in all cases easy to draw a clear line of distinction between the acts of a corporation relating to its internal management, and those which do not. But we apprehend the distinction to be this: That where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation, our courts will not take jurisdiction. Where, however, the act of the foreign corporation complained of affects *the complainant's individual rights only,* then our courts will take jurisdiction, whenever the cause of action arises here." (Emphasis added)

The cause of action in this case arose when the Maryland plaintiffs made demand upon the corporation for the payment of the fair value of their stock. When such demand was not honored, the plaintiffs asserted in this suit their right to have a court determine the fair value of the stock. Only the plaintiffs' individual rights are involved, and the *only way that the corporation will be affected* by the verdict is that it will be required to pay the judgment, if the plaintiffs are successful.

A distinction of this sort was recognized by the Supreme Court in Williams v. Green Bay & W. R. R., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311 (1946). In that case, the holders of a class of debentures had sued in a New York federal court to recover an amount due from earnings in lieu of interest from a Wisconsin corporation. In holding that the District Court had erred in invoking the doctrine of *forum non conveniens* to dismiss the case, the Supreme Court said the following (at pages 555–557, footnotes omitted):

> "The relief sought against a foreign corporation may be so extensive or call for such detailed and continuing supervision that the matter could be more efficiently handled nearer home. The limited territorial jurisdiction of a federal court might indeed make it difficult for it to make its decree effective. But where in this type of litigation only a money judgment is sought, the case normally is different. . . . Each case turns on its facts."

Concededly, there are no Maryland cases deciding the precise point at issue here. However, from a review of the Maryland and other authorities in light of the complaint here, it is concluded that if this question were presented to the Court of Appeals of Maryland, that Court would not hold that a Maryland court should decline jurisdiction under the circumstances of this case because this action involves the internal affairs of a foreign corporation. Under this interpretation of the Maryland law, this Court likewise should not decline jurisdiction.

■ But even were the Maryland rule otherwise, this Court concludes that as a matter of federal law established by the United States Court of Appeals for the Fourth Circuit, this Court does not lack subject matter jurisdiction of the dispute in this case. In Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir. 1965), the Fourth Circuit held that a district court may entertain a suit against a foreign corporation on a cause of action arising in another state despite a statutory bar to such a suit in the

courts of the state in which the federal court was sitting. The same principle should be applied, of course, to a bar arising as a result of judge-made law. In *Szantay*, Judge Sobeloff reviewed the Erie R.R. v. Tompkins doctrine and subsequent decisions of the Supreme Court as they might apply to an action such as the present one. Judge Sobeloff noted that in Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Supreme Court held that a state procedural rule must be followed if it is bound up with the state-created rights and obligations, but that if it is a mere form or mode of enforcing rights, its application by a federal diversity court will hinge on a broader inquiry. Judge Sobeloff stated that in attempting to resolve a federal-state conflict in a diversity case, a federal court should undertake the following three-step analysis:

> "1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

> "2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

> "3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity."

349 F.2d at 63–64.

Applying this three-step test in this case, it appears first that the Maryland internal affairs rule is quite clearly not the substantive right or obligation at issue nor, although procedural, is it a procedure intimately bound up with the state right or obligation. In cases where the Court of Appeals of Maryland has applied the internal affairs doctrine,

it has been held that Maryland courts are without jurisdiction at all to hear the dispute. Since the substantive right of a dissenting stockholder of Marquette of Illinois exists only by virtue of an Illinois statute, it is evident that the procedural limitation imposed by the State of Maryland is not intimately bound up with the Illinois right. This Court, thus, must apply the third stage of the *Szantay* rule. In doing so and in evaluating the relative strengths of underlying state and federal considerations, this Court concludes that there are affirmative countervailing federal considerations which would require this Court to decline to apply the state procedural rule. In Atkins v. Schmutz Manufacturing Co., 435 F.2d 527 (4th Cir. 1970), the Fourth Circuit noted the unified nature of our judicial system with its relatively liberal transfer provisions, its multidistrict litigation procedures and its simplified procedures for enforcing judgments. With no such powers or procedures, the Maryland courts have declined to exercise jurisdiction in a case involving the internal affairs of a foreign corporation.

In both the *North State Copper* and the *Condon* opinions, the Maryland Court of Appeals noted that a Maryland court might be unable to enforce its judgments against a foreign corporation. But no such considerations would apply in a federal court. The resolution of a problem arising out of the nature of one judicial system ought not to control in a mechanistic way the resolution of a somewhat similar problem when it comes up in the context of a very different system. Atkins v. Schmutz Manufacturing Co., *supra* at 531. See also Markham v. City of Newport News, 292 F.2d 711, 718 (4th Cir. 1961).

Under *Szantay* and the other Fourth Circuit cases cited hereinabove, this Court concludes that countervailing federal considerations dictate that in this particular case the Court should not decline jurisdiction because of the Maryland internal affairs rule, even were the rule broad enough to encompass the

facts of this case. Only a money judgment is sought here. Defendant does business in many states, and plaintiffs have chosen to sue this national corporation in this federal forum. No problem exists as to the enforcing of a judgment of this Court. Finally, if this suit is dismissed, plaintiffs are without a remedy as their claims are now time-barred in Illinois.

In support of its motion to dismiss, defendant relies on the following federal cases: Weiss v. Routh, 149 F.2d 193 (2d Cir. 1945); Sheridan v. American Motors Corporation, 132 F.Supp. 121 (E.D. Pa.1955); and McGhee v. General Finance Corporation, 84 F.Supp. 24 (W.D. Va.1949). The *McGhee* case was a decision of the United States District Court for the Western District of Virginia handed down in 1949. It has been in effect overruled by the later *Markham* and *Szantay* decisions of the Fourth Circuit. The *Weiss* and *Sheridan* cases were decided by courts sitting in circuits other than the Fourth Circuit and are not controlling here. It should further be noted that each of those cases involved dissenting shareholder statutes quite different from the one to be applied in this case. Under Virginia law, which was applied in both *Weiss* and *McGhee*, the dissenting shareholder has a right to have his stock appraised by three disinterested persons who are residents of the State of Virginia. The *Sheridan* case was an action in equity, asking the federal court to appoint three appraisers to determine the value of their shares of stock pursuant to Maryland corporate law. Where equitable relief of this sort is sought by a dissenting shareholder in a federal court located in another state, a much different federal-state conflict is presented from the one here. The Illinois statute does not require the appointment of Illinois appraisers by an equity court but merely entitles the dissenting shareholder to have the fair value of his stock judicially determined.

■■ The defendant's second argument is that this Court should decline jurisdiction in the exercise of its discretion. But a district court has a duty to retain and decide cases where its jurisdiction has been properly invoked unless there are "exceptional circumstances". Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9 (1943). See also County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163 (1959). Here there are no "exceptional circumstances" of the types enumerated in the *Meredith* opinion.

Moreover, the court must exercise its discretionary powers "in the interest of justice." In this case, justice and fairness require that this Court retain jurisdiction. Comity does not require a different result. The Restatement (2d), Conflicts, Section 313, states the general rule:

> "A court will exercise jurisdiction over an action involving the internal affairs of a foreign corporation, unless it is an inappropriate or an inconvenient forum for the trial of the action."

It would appear that the Illinois courts would approve such a rule. In Wise v. H. M. Byllesby & Co., 285 Ill. App. 40, 1 N.E.2d 536 (1936), the court entertained an action to permit inspection of the corporate books of a foreign corporation. If Illinois will assert jurisdiction over the internal affairs of a foreign corporation, it can have no major objection if a foreign forum accepts a case involving the internal affairs of one of its corporations. Moreover, as previously noted, the relief sought here is merely a money judgment, as in Williams v. Green Bay & W. R. R., *supra*. There is no indication that the Illinois statute will be difficult to apply. Finally, the 90-day period of limitations for the bringing of this action in a state court in Illinois has now run so that if this Court declines to accept jurisdiction, plaintiffs would be without remedy.

For these reasons, this Court concludes that it should not, in the exercise of its discretion, decline jurisdiction in this case. A similar result was reached

in Lapides v. Doner, 248 F.Supp. 883 (E.D.Mich.1965), under facts indicating a much greater involvement by the federal court in the internal affairs of a foreign corporation than here.

Finally, defendant contends that this Court should dismiss this suit because of the doctrine of *forum non conveniens.* See Koster v. Lumberman's Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); and Gulf Oil Co. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

▆▆ This doctrine is governed by federal law, but it has been largely superseded today in the federal courts by the adoption of 28 U.S.C. § 1404(a), which was enacted by Congress in 1948 after the *Koster* and *Gulf Oil* cases. See Wright, Federal Courts (2d Ed. 1970), Section 44, page 165. Only in rare instances where the alternative forum is a state court may a federal court now dismiss on the grounds of *forum non conveniens. Idem,* at page 165. When the doctrine is invoked on a motion to dismiss, it is subject to careful limitation and applied only in exceptional cases. Hoffman v. Goberman, 420 F. 2d 423, 426 (3rd Cir. 1970). Unless the balance is strongly in favor of the defendant, the forum chosen by the plaintiff should not be disturbed. *Idem,* at p. 426.

▆ The facts here do not make this one of those exceptional cases which should be dismissed on the grounds of *forum non conveniens.* Although defendant has not moved at this point under § 1404(a) for a transfer of this case to another district, the facts here would not appear to even support its right to such a transfer. Plaintiffs are residents of Maryland and have chosen this federal forum for the resolution of this dispute. Defendant is now incorporated in the State of Delaware and recently has moved its corporate offices to Nashville, Tennessee. Defendant is a national corporation doing business in various states and has a large plant in Maryland. The stock of defendant is listed on the New York Stock Exchange. Were this Court to dismiss this action, as previously noted, plaintiffs would be without a remedy because their claim is time-barred in the Illinois state court. In Esso Transport Co. v. Terminales Maracaibo, C.A., 352 F.Supp. 1030, 1031 (S.D.N.Y.1972), the Court held that it would not dismiss on grounds of *forum non conveniens* because the suit in question would be time-barred elsewhere, even though that federal court had only the most minimal contacts with the case. Here, both sides have substantial contacts with Maryland. Thus, the balance of convenience here is not so strongly in favor of defendant that this suit should be either dismissed or transferred.

For all these reasons, defendant's motion to dismiss will be denied.